## MATEO FAJARDO

*v.*

## SUCRERIE CENTRALE COLOSO.

---

San Juan, Law, No. 1161.

ON MOTION TO DIRECT A VERDICT FOR DEFENDANT.

Contract—Sale—Option.

    1. Where the alleged contract is evidenced by correspondence it is for the court to decide whether it amounts to a sale, an option, or is complete. Where part of the transaction consisted of oral interviews between the parties, it may become a matter for the jury under proper instructions.

Contract—Essentials.

    2. Civil Code of Porto Rico, § 1228, requires consent, object, cause, or consideration. Code Napoleon, § 1108, adds capacity, but that is implied in the Porto Rico Code.

Fajardo v. Sucrerie Centrale Coloso.

Option—Damages.

> 3. Damages naturally growing out of the breach of an option
> are recoverable just as fully as damages growing out of the breach
> of any other contract.

Opinion filed June 7, 1917.

———————

*Mr. Willis Sweet* and *Miles M. Martin* for plaintiff.

*Mr. William F. H. Dexter* and *M. Rodriguez Serra* for defendant.

HAMILTON, Judge, delivered the following opinion:

This matter was submitted upon a motion of the defendant at the end of the plaintiff's case, in effect to take the case from the jury on several grounds that were named. That was argued and must now be decided.

1. In the first place it is necessary to determine what this suit is for. The complaint filed November 21, 1916, alleges that on the 12th of August the plaintiff made inquiries of Carlos Franco Soto in regard to the sale of the sugar factory and price. On the 18th this agent was directed from Paris to put the price at a million and a half dollars, and to deliver the inventory. The inventory showed the property worth $2,380,-159.11. The plaintiff then says that, upon receipt of this price and inventory, he offered $1,400,000. Then on the 1st of September he received a communication which is the one counsel discussed in the case at bar. There was first a telephone message and afterwards a letter, each of which purported to give the cable from the home office. That the cable which is in evi-

Fajardo v. Sucrerie Centrale Coloso.

dence is as follows in English: "We cannot reach a conclusion by cable. If our man intends to do the business, why does he not come to Paris without delay? At the time of departure telegraph here according your cable of 26th." Then certain other matters. The French expression is: "Si notre homme a l'intention de faire affaire pourquoi ne vient-il pas Paris sans retard." If he is going to do the thing, why does he not come to Paris? The next day, I believe, or certainly as soon as possible, the plaintiff went to Paris; that is to say, he went to New York and made certain arrangements. Those arrangements seem to have put him in condition to take care of the million and a half dollars. Of course that would not be material because the defendant would have nothing to do with how he got the money. Those negotiations in New York, however, throw light back upon the transaction. The facts of the case might develop one of two things. Either the plaintiff might claim there was a complete contract made, and sue the defendant for breach of the contract of sale; that there was a complete sale and that the plaintiff was damaged by the defendant's turning around and making another sale to somebody else. That might be one phase of it. Another might be this, that there was not a complete sale, and that the plaintiff had what is sometimes called an option, indirectly however, that the plaintiff had a promise that he would have a certain length of time within which to negotiate and make a purchase. The facts might justify one or the other of those two conclusions. The complaint itself does not claim a sale. All through it speaks of his proceeding to Paris and arranging the details of said purchase. For instance, that he was subjected to many dangers and to expenses amounting to so much, and that his actual loss in the

Fajardo v. Sucrerie Centrale Coloso.

contracts of the purchase and resale of said property amounted to so much, and that plaintiff was by the refusal and failure of the defendant to make good its promise to sell said property to plaintiff within the time stated, damaged, etc. The theory of the complaint seems to be that it was in the nature of an option to be completed within a certain time. Nowhere, as I read it, does the complaint claim a complete sale. And it looks to me as if the facts developed by the plaintiff tend in the same direction, that is to say, that he may have had a contract for the purchase of the property, some terms perhaps indefinite, but it was to be concluded at Paris. Now within what time? The plaintiff's testimony, and of course that is all we have to go on at present, is that it was in the month of September. That is borne out by some telegrams and cables. At New York he cabled that he could not be there until the end of the month. The reply from the Paris office was that the end of the month would find the president there at Paris and ready; so it would seem as if one view of the facts would be that there was a right to buy that property during the month of September on certain terms, some of which were not finished. He seems to have exercised all the diligence that could be exercised under the circumstances. It took him a long time to get to Paris, but that was the fault of the state of war that existed. He got there on the 27th of September. On the 28th he called at the office of the company and was informed that he was too late. The next day he got a letter from the company, which says: "We take the advantage to confirm what we told you yesterday, 28th Sept.,"—this is the 29th,—"at your call at our office. The circumstances that have delayed your arrival in Paris have not allowed us to prolong our delay beyond the 28th of Sep-

Fajardo v. Sucrerie Centrale Coloso.

tember, that we had accepted as the term to give a definite
answer. As we have stated to you, we have waited for your
arrival to the extreme limit, and we were sorry not to have
been able to consider the summary offer you made us by cable,
which left many points indefinite. Kindly receive the assur-
ance of our sentiment," etc. So that this goes also upon the
theory that it was in the nature of an option to be concluded
by negotiation at Paris. The difference between this letter
and the testimony of the plaintiff is that this letter says that
the term was the 28th of September. The plaintiff says that
it was the whole of September, but of course that is simply a
conflict of evidence which I would have nothing to do with.

So it seems to me that the complaint and the testimony of
the plaintiff also go upon the theory that the plaintiff had a
right to buy that property during the month of September.
So much then for the pleadings.

2. Now, in the next place, is this a case which the court can
decide and take from the jury? It is mainly in writing. Par-
ties were at a distance from each other. The two main papers
in the case,—others are important,—but the two principal
things perhaps are the original cable and this letter or this
interview at Paris. One made up the contract, whatever it
was, and the other was an interview which showed how the
parties looked at the contract. One helps out the other. If
it was all in writing, the court's duty would be plain, but the
fact that it is not all in writing does not change that duty
either.

When a motion is made at the end of the plaintiff's case to
take the case from the jury, the court has to say "yes" or "no,"
and it has to do it upon this basis. If it left the case to the

Fajardo v. Sucrerie Centrale Coloso.

jury, and there was a verdict for the plaintiff, could the court sustain that verdict upon a motion for a new trial, or would it have to grant the new trial? If it would have to grant a new trial, there is no use of going ahead and letting a verdict be rendered. It might as well take the case from the jury in the first place. The fact that everything was in writing would not make any difference. There is the principle that where written instruments contain words of art, particularly in commercial transactions, that there the court would have to leave even written instruments to the jury. It could not determine the meaning of an instrument which depended upon extrinsic circumstances. The Marianna Flora, 11 Wheat. 4, 6 L. ed. 405; Williams v. Baker, 17 Wall. 147, 21 L. ed. 561; Brown v. M'Gran, 14 Pet. 479, 10 L. ed. 550. Those are cases where something else, some other circumstances, had to be considered before the court could construe the paper. That is not precisely this case although it is analogous, because here there are two elements, as I stated. First is the cable, which made up whatever contract there was; and, second, the interview of the parties, which showed how the parties looked at that contract, and the construction of the parties themselves is often of the very greatest assistance. So those cases are analogous, but not on all fours. But it would make no difference whether the case depended entirely upon writing or depended partly upon circumstances. The point for the court to decide is, on the case as made out, whether in writing or by oral testimony, has the plaintiff made out a case which the court would let stand if the verdict was rendered in his favor? Now that depends upon several things. It is not quite clear in my mind whether this is governed by the law of Porto Rico or the law of France.

Fajardo v. Sucrerie Centrale Coloso.

The cable, it is true, was received in Porto Rico and was acted upon by the plaintiff living in Porto Rico, but it was sent from Paris, and the party to be bound was a French corporation, and it invited the plaintiff to go to Paris to conclude the matter; but I do not think that would make very much difference. The law of Porto Rico, that is, the Spanish Code in § 1228 of the Civil Code, is: "There is no contract unless the following requisites exist: (1) Consent of the contracting parties; (2) a definite object which may be the subject of the contract; (3) the cause for the obligation which may be established." [Compilation 1911, § 4334.]

That word "cause" is supposed to be nearly equivalent to the English word "consideration." So there are those three things, —object of the contract, consent of the parties, and consideration. Now if it was the French law, if French law controlled, assuming that the Code Napoleon is still in force in France, § 1108 has this in the Code Napoleon: The four conditions essential to the validity of an agreement are (1) the consent of the party who binds himself. That is the same. (2) His capacity to contract. That is not in the Spanish Code but is implied. (3) A certain object forming the matter of the contract. That is the same,—different words but the same in substance. (4) A lawful cause in the bond or obligation. That is almost identically the same. So that the three or four elements which make up any contract are the same in France that they are in Spain and in Porto Rico. No more time need be spent upon which law controls, the law being exactly the same, whichever controls. The more important point as to these different elements of a contract is this—Do they exist in the case at bar?

Fajardo v. Sucrerie Centrale Coloso.

I am eliminating the idea of a complete sale, because, if the case depended upon that, if that was the complaint, I think I would have to grant the motion. I do not think there was a complete sale; but, as indicated above, there is the other side of it to be considered, and the one on which, to my mind, the complaint seems to go; that is to say, a promise of sale. Now, was there a promise of sale? There would have to be these different elements and some others connected with the special contract. There was a definite object. It was the sale of the property of the Central Coloso. There was the consent of the contracting parties. Their minds had met that there was to be a sale. Now as to the other element, the consideration, it seems that nothing was paid so far as appears. Nothing was paid by the plaintiff to the defendant for this contract, which, just to distinguish it from sale, although the word is not apposite, I will call an option. The defendant fixed its price at 1,000,000 and a half. The plaintiff offered 1,400,000, and it has been held, of course it would be the law all over the world I take it, that where there is a modification of the terms, the modification must be agreed to or there is no contract, no sale. That is found in Bussy v. Nelson, 30 La. Ann. 25. And as to the capacities of the parties, as mentioned above, that is true,—the agency must be proved. The right to make the contract, whatever it may be, must be proved. That is found in Arruza v. Laugier, 14 P. R. R. 24. The consent of the parties is enlarged on in Collins v. Louisiana State Lottery Co. 43 La. Ann. 9, 9 So. 27. But, as I say, this was not a sale. It was a promise to sell, an option. In that shape, modification does not cut any figure. What the jury might conclude was agreed between the parties, as I interpret the facts, was that they were

close together in a large transaction; that if the plaintiff would come to Paris within the month of September he would have the right to purchase at terms to be agreed upon. Now, was there any consideration for that agreement? The law is that a man may say he will do a thing, and turn around the next day and not do it, and not be liable for damages if nothing has been paid, if there has been no consideration for that promise. That is true. Was there any consideration for this option? I think there was. It was an invitation, which was accepted, for the plaintiff to take his life in his hands, cross the ocean, brave the elements. That of course is a small matter nowadays in time of peace, but here it was to brave all the chances of submarines and of warfare generally; and he was, according to his testimony, allowed one month for that purpose. He did that. He got to Paris, and he found that, according to the statement of the plaintiff, upon the very day that he called, the defendant had within the time allowed him put the matter out of its own power; that the defendant had on that very day made a sale to somebody else at the price he had offered, $1,400,000. Now, whether that is true or not is a matter that is not material. According to the defendant's own showing, it had incapacitated itself for carrying out this option during the month of September, of which there were certainly two days left. A consideration may be either positive or negative. A consideration may consist in the payment of money, in this case to the defendant. That would be one consideration for this option of thirty days, but a consideration may be negative also. If the plaintiff at the defendant's request put himself in a worse condition than he was before, financially or otherwise, that is a consideration also. And in this case, from the testimony of the plaintiff,

Fajardo v. Sucrerie Centrale Coloso.

that is true.    He went to the expense at all events of the trip to Europe.    As to the expense at New York, I am not sure whether that would come·in or not, because it is not the defend-ant's business that the plaintiff did not have a million and a half dollars in his pocket.    I presume that it was his duty to have that in his pocket if he contracted to pay it, and if he did not have it he would be obliged to get it at his own expense. But all the expense incidental to going to Europe in connection with the trade, and taking his life in his hands, seems to me to be a sufficient consideration for this promise to sell during that month of September.    I am not deciding, of course, that the defendant had all of the month of September.    That is for the jury.    This letter of the defendant tends to show that Septem-ber 28th some way or other was the limit.    What the testimony may be on that point I do not know; but, as I remarked above, this would be simply a conflict of testimony for the jury which I would have nothing to do with at present.

So, it seems to me that there is enough to go to the jury, and in that view of it I will have to deny the motion.